# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) ) |
| v. | ) No. 00-CV-236-TCK/FHM |
| ROBERT D. LOWRANCE, et. al., | ) ) ) ) |
| Defendants. | ) |

## OPINION AND ORDER

Comes on for decision Motion to Quash Writ of Garnishment by R.D. Lowrance, Inc., [Dkt.#208] on which the Court held evidentiary hearing on September 20, 2005. Additional authority was provided to the Court by counsel for Plaintiff following hearing. However, in researching the decision, the Court found both counsel had made representations to the Court at hearing and in their filings which required clarification. Consequently, on October 20, 2005, the Court held a subsequent telephone conference, which resulted in admission of Court's Exhibit #1.[1] Having now considered the arguments and authority submitted, the Court finds the Motion shall be denied.

### I. FACTUAL BACKGROUND

1. On March 20, 2000, the United States ("USA") filed its Complaint against Robert

---

[1] Court's Exhibit #1 is an answer by Premier Cattle Company to a March, 2005 writ of garnishment which was never filed of record but which was served on counsel for USA and Defendant R.D. Lowrance. See facts numbered 12 through 14 herein.

1

D. Lowrance ("Lowrance") seeking to reduce a federal tax assessment against him to judgment and to foreclose federal tax liens

2. On May 10, 2002, USA filed Motion for Summary Judgment with brief, requesting judgment against Lowrance.

3. On September 18, 2002, the Court granted USA's Motion for Summary Judgment against Lowrance.

4. On December 17, 2002, USA obtained a judgment from this Court in the amount of $5,135,046.19 against Lowrance with respect to his 1994 federal income tax liability.

5. On May 2, 2003, this Court issued twenty-one (21) Post-judgment Continuing Writs of Garnishment and Subpoenas, one of which was directed to R.D. Lawrence, Inc., 2450 B SE Washington Blvd., Bartlesville, Ok 74006, directing the corporation to withhold and retain any property in its possession, custody or control in which the judgment debtor had an interest or in which he may obtain an interest in the future.

6. On May 28 and 29, 2003, after he learned that USA had issued writs of garnishment to many of his debtors, Lowrance wrote $41,000.00 of checks on his bank account at Home National Bank, thereby converting nearly the entire account balance into cashier's checks or cash.

7. On June 3, 2003, service of the May 2, 2003 application and writ was made on R.D. Lowrance, R.D. Lowrance, Inc., at 2450 SE Washington Blvd., by Wehmeyer Process Service, Inc. The same process server served seven (7) subpoenas the same day, one of which was on R.D. Lowrance, Lobo Cattle Commodities at the same address as R.D. Lowrance, Inc., and one of which was on R.D. Lowrance, judgment debtor. Service to judgment debtor does not indicate an address. Certificate of service was filed on June

13, 2003 by USA.

8. R.D. Lowrance, Inc., is a Missouri corporation of which Lowrance is the President and sole shareholder.

9. Neither Lowrance nor R.D. Lowrance, Inc., filed an answer to the writ. Answers were due in June, 2003.

10. On August 21, 2003, Lowrance filed for bankruptcy protection, arguing that his 1994 tax debt was dischargeable.

11. After a trial on February 28, 2005, the Bankruptcy Court found that Lowrence had "voluntarily, consciously, knowingly, and intentionally" attempted to conceal assets from the IRS in order to avoid payment of his 1994 tax liability. *In re: Lowrance*, 324 B.R. 358 (Bankr. N.D. Okla. 2005).

12. On March 11, 2005, USA filed an application for a Post-Judgment Continuing Writ of Garnishment and Subpoena on Charles Whitaker, Manager, Premier Cattle Co., ("Premier") directing the corporation to withhold and retain any property in its possession, custody or control in which Lowrance had an interest or in which he may obtain an interest in the future. The writ was issued by this Court on March 15, 2005. This did not refer to R.D. Lowrance, Inc., but listed several other businesses, most of which included the name "Lowrance" in their title.

13. On March 22, 2005, Premier served an answer on Lowrance at 475 Moose Lodge Road, Bartlesville, Oklahoma 74006, and on attorney for USA via Fed Ex Priority Overnight. The Court learned at telephone conference on October 20, 2005 that Premier's answer to the March 15, 2005 writ was never filed with the Court.   The answer, admitted at telephone conference as Court's Exhibit #1, stated Garnishee was not in possession,

custody or control of any property in which the named Debtor had an interest. Added to this statement was the following: "However, on 12/22/03, 12/30/03 and 4/19/04, the Garnishee issued checks to R.D. Lowrance, Inc., in the total amount of $52,672.88. It is not known whether, as of this date, these checks have been negotiated. Also, Garnishee does not know who are the shareholders of R.D. Lowrance, Inc., Defendant R.D. Lowrance or any of his entities named in the Continuing Writ."[2]

14. On April 1, 2005, USA filed a Certificate of Service certifying that the March 11, 2005 writ application and writ was served on Lowrance as judgment debtor by first class mail, postage prepaid at his home address of 475 Moose Lodge Road, Bartlesville, Oklahoma, 74006. Objection to Premier's unfiled but served answer would have been due no later than May 1, 2005. This procedure was clearly set forth in the writ served upon Lowrance. No objection or request for hearing was filed.

15. On April 7, 2005, USA filed a second Motion for Post-Judgment Continuing Writ of Garnishment and Subpoena on Premier. The second writ noted in the caption that it included the entity R.D. Lowrance, Inc. The writ directed Premier to withhold and retain any property in its possession, custody or control in which Lowrance had an interest or in which he may obtain an interest in the future, and noted that Lowrance did business in the name of R.D. Lowrance, Inc. This writ was issued by this Court on April 8, 2005. No certificate of service was filed in connection with this writ.[3] After receiving the second writ, Premier

---

[2] Court's Exhibit 1 contains a fax notation at the top of each page showing the answer was transmitted by fax from "Riggs, Abney, Atty." to Lowrance Commodities on June 22, 2005. Scott Kirtley, bankruptcy attorney for Lowrance, practices with the Riggs, Abney firm.

[3] At telephone conference, USA admitted it did not serve Lowrance or R.D. Lowrance Inc. However, Lowrance received actual notice through his bankruptcy attorney, Scott Kirtley, who

cancelled the checks it had issued to R.D. Lowrance, Inc., and eventually turned the funds over to USA.[4]

16. On April 25, 2005, Premier filed its answer to the second writ and served a copy on Lowrance at his home address by FedEx Priority Overnight. The answer states: "Garnishee has possession, custody, or control of the following non-earnings property in which Defendant judgment debtor has an interest:  Description of property: $52,672.88."

17. On June 21, 2005, USA filed a Motion for Entry of Order in Garnishment Action, in which USA referenced the issuance of the second continuing writ on Premier, and recited the fact that following Premier's answer filed April 19, 2005[5], no objection to the garnishee's answer had been filed by judgment debtor Lowrance within the required 30 days.  USA requested that the Court enter an Order directing Premier to issue a check to the United States Treasury in the amount of $52, 672.88. The Certificate of Service certifies that a copy of the Motion was served on Lowrance's counsel in a prior bankruptcy and his counsel in the second bankruptcy, who at the time was representing him on the appeal of dischargeabiltiy determination.

18.  On June 23, 2005, the Court issued an Order as requested in the motion. There is no certificate of service filed in connection with the Order. However, Court records

---

gave a copy to Lowrance.  Andrew Townsend, attorney for R.D.Lowrance, Inc., advised the Court that Scott Kirtley gave him (Townsend) a copy of the subsequently filed Motion For Entry of  Order, but did not say when.

[4]The Court remained unaware of the cancellation of the checks by Premier until subsequent telephone hearing. The funds were turned over to USA pursuant to the Court's June 23, 2005 Order.

[5]The answer was not filed until April 25th, but was notarized on April 18th and served on April 22.  The answer is in response to the second application and writ.  The Court assumes the date of April 19 is a typographical error.

5

reflect that with the commencement of electronic filing by this Court in January, 2005, the Order was mailed by the Court to counsel of record for Lowrance, Paul Tom.[6] The html text in the electronic court file shows service on the date the Order was entered, June 23, 2005.

19.  On August 18, 2005, R.D. Lowrance, Inc., filed this motion to quash.

20. In Lowrance's dischargeability trial, USA asserted that Lowrance used R.D. Lowrance, Inc., to hide assets from the government. Lowrance stipulated to the following facts about R.D. Lowrance, Inc.:

> Lowrance held most of his land in Missouri under the name R.D. Lowrance, Inc. When some of the Missouri land was sold, the proceeds were paid to Lowrance personally. Several of the HUD statements do not even list R.D. Lowrance, Inc., as the seller, and several checks representing proceeds of these sales were made out to Lowrance personally. All of the Missouri land sale proceeds were reported as income on Lowrance's personal federal income tax returns. They were not reported on the federal income tax returns of R.D. Lowrance, Inc.

21.  In a 1997 deposition, Lowrance testified R.D. Lowrance, Inc., had farmed and fed cattle, had no assets other than a piece of land, having ceased to do business when the tax issues started with the IRS.

22. In a 2004 deposition, Lowrance testified R.D. Lowrance, Inc., had no assets, and he assumed the assets it had were sold.[7]  When questioned regarding entries on his 1998

---

[6]Orders are e-mailed to counsel of record unless they do not have an e-mail address registered with the Court. Paul Tom did not have an e-mail address and was therefore physically mailed copies of orders by the Court Clerk. All orders filed after January, 2005, were served by the Court on counsel for Lowrance, Paul Tom, who had never withdrawn as counsel for R.D. Lowrance, even though he had withdrawn as to co-defendant Mark Lowrance. The docket sheet reflects Paul Tom as "ATTORNEY TO BE NOTICED." Attorney filings with the Court are also to be served electronically or by mail according to the same criteria. USA was remiss in failing to follow this procedure.

[7]This deposition was taken after he had been given at least two of the checks issued by Premier.

tax return showing Lowrance owned depreciable assets, he stated he did not know if those had ever been owned by R.D. Lowrance, Inc. He stated that it was too far in time to remember and that he, as President and sole shareholder, would be the person who would know.

## II. ARGUMENT AND AUTHORITIES

R.D. Lowrance, Inc., filed the motion to quash the April 8, 2005, post-judgment continuing writ of garnishment issued by USA on garnishee Premier. R.D. Lowrance, Inc., urges it did not receive notice of the garnishment, it has been denied due process and an opportunity to be heard and that reverse-piercing of the corporate veil is not permitted under Oklahoma law.

## A. NOTICE/DUE PROCESS

USA filed response, asserting several theories under which the motion to quash should be denied and the funds forfeited under the writ. USA first urges the R.D. Lowrance, Inc., received actual notice in that Lowrance was the person served with the 2003 writ on behalf of R.D. Lowrance, Inc., for which he was the sole shareholder and decision maker. He was also personally served as the judgment debtor. Neither Lowrance nor R.D. Lowrance, Inc., filed answers or objections to the 2003 writ.

The Court finds when R.D. Lowrance, Inc., and Lowrance were served with the 2003 writ, and neither filed answers contesting the writ, R.D. Lowrance Inc., waived any right to object to any garnishment proceedings directed toward property in the possession, custody or control of any third party in which R.D. Lowrance, Inc., had an interest or in which it obtained an interest in the future. The writ issued states: "If you fail to withhold property in accordance with this Writ, you may be held in contempt by the Court or the

Court may enter judgment against you for the value of the judgment debtor's nonexempt interest in such property, plus a reasonable attorney's fee to the United States. See 28 U.S.C. §§3003(c)(8) and 3205(c)(6). It is unlawful to pay or deliver to the judgment debtor the property attached by this writ."

The 2003 writ further advised an answer was required to be filed with the Court Clerk of the Northern District of Oklahoma, in writing and under oath, within ten (10) days pursuant to 28 U.S.C.§3205(c)(4). It specifically directs the recipient to Fed.R.Civ.P. 5 for acceptable methods of service on judgment debtor and counsel for USA. None of the conditions under which the continuing writ would expire have been met. R.D. Lowrance Inc.,'s failure to respond waives its right to object in this proceeding.

The Court further finds R.D. Lowrance, Inc., filed the current motion to quash seeking relief with unclean hands. That status raises an additional ground under which this Court finds a waiver has occurred. By Lowrance accepting checks on behalf of R.D. Lowrance, Inc., after the issuance of the 2003 writ to R.D. Lowrance, Inc., and during the time the corporation was under a continuing obligation to turn over any property it held, Lowrance wilfully used the corporation to continue an established pattern of deception and dishonesty in dealing with the USA. The Bankruptcy Court referred to this pattern in its finding that Lowrance had "'voluntarily, consciously, knowingly, and intentionally' attempted to conceal assets from the IRS in order to avoid payment" of his tax liability. The fact that Lowrance still carried the checks, referenced in paragraph number 13 at page 3-4 herein, unnegotiated for over a year after their issuance supports this finding. Further, Lowrance gave false testimony in his 2004 deposition regarding the assets of the corporation when, at the time of the deposition, he had in his possession and control at least two of the

checks which are the subject of this motion to quash.[8]

Additionally, the Court finds Lowrance was personally served with the first application for writ of garnishment filed in March, 2005. Even though service was to Lowrance at his home address and not at the address of R.D. Lowrance, Inc., this put him on actual notice that USA was pursuing property held by Premier, from which he had received checks, and was holding checks, on behalf of R.D. Lowrance, Inc.

Premier served its first answer on Lowrance, in which Premier listed the checks issued to R.D. Lowrance, Inc.[9] Lowrance was also personally served with the second answer of Premier at his home address. He was aware he held the checks specifically referenced in Premier's answer to the first 2005 writ, which totaled the amount referenced in Premier's answer to the second 2005 writ.

R.D. Lowrance Inc.,'s motion to quash is premised upon the corporation not receiving actual notice of the April (second) writ. Normally, failure to properly serve the corporate designee would warrant quashing service. However, the circumstances of this case compel a contra result. When actual notice is given to the person responsible for accepting service for the corporation, it is sophistry to argue a distinction where none is made in any other aspect of the business relationship and where there is only one person who owns and controls the corporation. While it is true that no court has previously entered a finding that the corporation is the alter ego of Lowrance, the record, and Lowrance's own testimony in support of the pending motion as well as in prior stipulations to the Court,

---

[8] See paragraph number 22, page 6 herein.

[9] Lowrance was also faxed a copy of the first answer of Premier by Scott Kirtley, Lowrance's bankruptcy attorney.

could lead to no other conclusion. Nevertheless, this Court need not reach that conclusion to find actual notice was given to R.D. Lowrance, Inc., through Lowrance.

Lowrance testified at hearing before this Court that he often carried checks in lieu of keeping bank accounts in order to avoid bank accounts being attached by the IRS. He admitted selling assets of R.D. Lowrance, Inc., to pay down the IRS judgment in the past. He withheld information about the corporation and its assets and business dealings from his own advocate before the IRS, who testified at the hearing.

The Court finds service of the first application for writ in 2005 was properly made upon Lowrance, as judgment debtor, upon R.D. Lowrance, Inc., through service upon Lowrance in his capacity as President, and upon Premier, as garnishee pursuant to 28 U.S.C. §3205, Fed.R. Civ.P. 4(h). Lowrance was served with both of Premier's answers. Lowrance was served with the June 23, 2005 Order by the Court through counsel of record. Fed.R.Civ.P 5(b)(1) provides that subsequent to the original complaint:" [S]ervice . . . on a party represented by an attorney is made on the attorney unless the court orders service on the party."  Because Lowrance was the President and sole shareholder, and because he was authorized to accept service as President pursuant to Fed.R.Civ,P. 4(h)[10], the Court finds R.D. Lowrance, Inc., was properly served. This conforms to the requirements that the notice given be reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present objections. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950).

---

[10]Fed.R.Civ.P. 4 (h) provides that service upon a domestic corporation shall be effected by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized to receive process.

The Court finds any error in connection with USA serving the Motion for Entry of Order in Garnishment Action upon bankruptcy counsel rather than Lowrance or his counsel in the underlying action is harmless error in light of the Court's mailing of the Order itself. The Court notes that bankruptcy counsel forwarded copies of pleadings to judgment debtor throughout this matter, although not required to do so.

R.D. Lowrance, Inc.,'s argument that it was denied due process and an opportunity to be heard also fails for the reasons stated.

### B. ALTER EGO

The record establishes that R.D. Lowrance., Inc., was the alter ego of Lowrance. The testimony at hearing established assets were co-mingled with the personal assets of Lowrance, that Lowrance was the sole shareholder, that Lowrance has transacted business through this and other corporations in order to hide assets on an ongoing basis, that board members were all relatives and that the only board meeting about which Lowrance testified appeared to be more of a family holiday gathering as there was no agenda, no formal notice was sent before the meeting, the corporation has no assets and the corporation does not maintain a bank account. Lowrance testified he paid his personal lawyers, namely Scott Kirtley, $19,000.00 from the sale of a lot which had belonged to the corporation. The record is completely void of any evidence Lowrance used the corporate entity, once legitimate, as anything other than a devise to further his scheme to avoid payment of taxes from the inception of Lowrance's difficulties with his tax liability.

However, in light of the Court's rulings that R.D. Lowrance Inc., waived any right to object to this proceeding, received actual notice, and was not denied due process, the Court need not address the issue of alter ego.

11

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Motion to Quash Writ of Garnishment by R.D. Lowrance, Inc., [Dkt.#208] is denied.

DATED THIS 21st DAY OF NOVEMBER, 2005.

*Sam A. Joyner*
Sam A. Joyner
United States Magistrate Judge